**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MATTHEW A.M.,[1] | ) | |
| | ) | No. 24 CV 50093 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| FRANK J. BISIGNANO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | July 21, 2026 |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

Matthew seeks disability benefits based on physical impairments. He brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his application for benefits. For the following reasons, Matthew's request for remand is granted:

**Procedural History**

Matthew filed his benefits application in August 2021 claiming disability onset on April 23, 2021. (Administrative Record ("A.R.") 31, 204-05.) After his application was denied, (id. at 89-95, 97-103), he sought and was granted a hearing before an Administrative Law Judge ("ALJ"), and he and a vocational expert ("VE") testified, (id. at 49-87, 158-77). The ALJ found in February 2023 that Matthew is not disabled. (Id. at 31-43.) After the Appeals Council denied Matthew's request for review, (id. at

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Matthew's first name and last initial in this opinion to protect his privacy to the extent possible.

1-7), he sought judicial review, and the parties consented to this court's jurisdiction, 28 U.S.C. § 636(c); (R. 7).

## Analysis

Matthew argues that the ALJ failed to: (1) follow Social Security Administration ("SSA") rules and regulations when assessing the state agency physicians' opinions; (2) properly evaluate his treating physician's opinions; and (3) consider his explanations before drawing inferences regarding lack of treatment and part-time work when assessing his symptom statements. (See generally R. 14, Pl.'s Br.) The court finds that remand is warranted based on the first and third claims of error.

### A.   Symptom Assessment

The court turns first to the ALJ's symptom assessment because that analysis affects other aspects of the ALJ's decision, including the residual functional capacity ("RFC") assessment. Matthew argues that in discrediting his reports of "constant pain" aggravated by "minimal activity," the ALJ improperly focused on his "lack of aggressive treatment" and ability to work part time. (R. 14, Pl.'s Br. at 15-16 (citing A.R. 39).) The ALJ indeed noted that since his alleged onset date, Matthew has not "pursue[d] any treatment." (A.R. 37.) And despite his statements that medication and steroid injections helped relieve his pain, (R. 14, Pl.'s Br. at 14 (citing A.R. 62-63, 344-45, 433)), the ALJ determined that Matthew's treatment was inconsistent with his reports of disabling pain because he "rarely [took] the medication" and "the last two injections for his neck failed to provide any relief," (A.R. 39).

2

However, Matthew explains that he did not have insurance or sufficient funds to pay for treatment, which he says the ALJ should have considered "as a reason why [he] was conserving his pain medication." (R. 14, Pl.'s Br. at 15 (citing A.R. 343).) The government does not respond to this argument, (see generally R. 17, Govt.'s Mem.), but the court shares Matthew's concern. After all, an ALJ cannot draw a negative inference about a failure to pursue treatment without "explor[ing] the claimant's explanations as to the lack of medical care." *See Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008). Here, Matthew informed his providers that he wanted to wait on certain imaging and other care because he lacked insurance or funds to pay for such care. (A.R. 343 (January 13, 2021 treatment record noting that "[d]ue to lack of funds and insurance, [Matthew] will plan to get CMP and CBC [lab testing] done at the health dep[artment] as soon as he is able to"), 345 (January 17, 2021 treatment record reporting that Matthew had "no insurance and d[id] not have a lot of money"); see also id. at 56 (Matthew's testimony that he makes $12.50 per hour working part time at Casey's).) While certain records show Matthew had insurance at times during the applicable period, (id. at 358, 363, 367, 439-40 (noting his insured status in July and November 2021, August 2022, and from November 2022 to April 2023)), he testified at his hearing that he stopped receiving steroid injections in his neck because of the high price—about $1,400 per visit—which he did not "have the kind of money [to] even try and pay for" given his low hourly wage, (id. at 67; see also id. at 56). Rather than explore this claim, (see generally id. at 49-79), the ALJ concluded that Matthew must be "satisfied with the reported pain-relieving benefits of alcohol

3

consumption as he reported drinking 8-30 beers a day," (id. at 39). Because the ALJ did not consider Matthew's explanations for not seeking medical treatment, the court cannot say that the ALJ considered all relevant evidence. *See* SSR 16-3p, No. SSA-2015-0055, 2017 WL 5180304, at *3 (Oct. 25, 2017).

Matthew next asserts that when downplaying his reported symptoms, the ALJ improperly noted that he "worked on a rather consistent basis, some of which was performed at a level of substantial gainful activity," while failing to acknowledge that his "attempts to work" were only part time, or explain how that work undermines his symptom statements. (R. 14, Pl.'s Br. at 15; R. 18, Pl.'s Reply at 11.) The court agrees that the ALJ should have said more here to explain her assessment of Matthew's part-time work and the significance of such work. The Seventh Circuit "has instructed ALJs not to draw conclusions about a claimant's ability to work full time based on part-time employment," *Weaver v. Berryhill*, 746 Fed. Appx. 574, 579 (7th Cir. 2018), because "even persons who *are* disabled sometimes cope with their impairments and continue working long after they might have been entitled to benefits," *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (emphasis in original). The ALJ's evaluation of Matthew's part-time work simply does not say enough to assure the court that she considered his "dogged efforts" to perform such work. *Stark v. Colvin*, 813 F.3d 684, 698 (7th Cir. 2016) (finding that the ALJ should have "acknowledged [the claimant's] efforts to continue work while experiencing significant pain").

4

Matthew then says the ALJ made matters worse by ignoring nonmedical evidence, such as his daily activities and precipitating and aggravating pain factors, as required by SSR 16-3p and 20 C.F.R. § 404.1529(c)(3). (R. 18, Pl.'s Reply at 11-12.) At the very least, Matthew suggests the ALJ should have explained inconsistencies between his daily activities and pain complaints and the medical evidence. (See id. at 15-16 (citing *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).) But while the ALJ acknowledged Matthew's reports that he has "limited ability to work due to neck pain, back pain, arm/hand pain and numbness, leg and foot pain/nerve damage, and depression," which "is increased by all activities and circumstances," (A.R. 37), she did not discuss his reported daily activities, such as working at Casey's a few hours a day, napping, watching TV, and taking care of his dog, (see id. at 277-78), or explain how those activities are inconsistent with reports of pain. (See generally id. at 31-44); *see also* SSR 16-3p, 2017 WL 5180304, at *3 (stating that an ALJ must consider factors like medication efficacy and side effects, daily activities, treatment received, and precipitating pain factors). Instead, the ALJ focused on inconsistencies between Matthew's symptom statements and "objective findings" and discounted Matthew's allegations because he had "no more than *mild* neuroforaminal narrowing" in his cervical spine post-surgery and "no more than *mild* median and ulnar neuropathies" based on "EMG and nerve conduction studies." (A.R. 39 (emphasis in original).)

The question then becomes whether this last, singular reason, which focuses on objective medical findings, is enough to support the ALJ's symptom assessment. This court—and other courts in this district—have affirmed symptom evaluations

where the ALJ has provided "a single valid reason" to support those evaluations. *See, e.g., Rachel S. v. Bisignano*, No. 23 CV 2341, 2026 WL 636740, at *3 (N.D. Ill. March 6, 2026) (refusing to remand where the ALJ provided a "single valid reason" for discounting the claimant's symptom statements because the ALJ properly evaluated other subjective allegations). But the key inquiry remains whether "substantial evidence"—or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"—supports the ALJ's symptom assessment. *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019); *see also Halsell v. Astrue*, 357 Fed. Appx. 717, 722 (7th Cir. 2009) (unpublished) (emphasis in original) (instructing that "[n]ot all of the ALJ's reasons" for discrediting a claimant's symptom allegations must be valid so "long as *enough* of them are"). Here, where several aspects of the ALJ's reasoning are deficient and the remaining reason does not address the nonmedical findings specified under SSR 16-3p, remand is warranted.

**B.    State Agency Opinions**

Matthew argues that the ALJ's two-sentence evaluation of the state agency physicians' opinions fails to satisfy SSA regulations. (R. 14, Pl.'s Br. at 5-10). An ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must instead assess the persuasiveness of all medical opinions by considering and explaining the most important factors—supportability and consistency. 20 C.F.R. §§ 404.1520c, 416.920c(b)(2); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). The supportability factor requires consideration of the objective medical evidence and

explanations presented and used by the medical source, 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1), while the consistency factor directs the ALJ to assess how the opinion is consistent with all other medical and nonmedical sources, 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ may also, but is not required to, explain how she considered the medical source's specializations and relationship with the claimant and any other factors that tend to support or contradict the source's opinion. 20 C.F.R. §§ 404.1520c, 416.920c(b)(2).

The ALJ found the state agency physicians' opinions limiting Matthew to light work "persuasive" but determined that additional limitations in "reaching, handling, fingering, and feeling" were needed to accommodate his upper extremity symptoms. (A.R. 40.) Matthew says this analysis is insufficient because the ALJ did not address the extent to which the state agency physicians' opinions are supported by or consistent with record evidence. (R. 14, Pl.'s Br. at 5-10 (citing 20 C.F.R. § 404.1520(b)(2)).)

The government responds that the ALJ adequately supported her evaluation of the state agency physicians' opinions, even though she "did not become mired in detail in assessing those opinions" or "mention [] supportability." (R. 17, Govt.'s Mem. at 3.) It is true that an ALJ "need not reiterate the magic words 'support' and 'consistent' for each doctor," but she must at least "weave supportability and consistency throughout [her] analysis" to show "which doctors were persuasive." *Zabrowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639-40 (3d Cir. 2024). Here the ALJ's findings lack any analysis whatsoever regarding the supportability or

7

consistency of the state agency physicians' opinions as required. *See* 20 C.F.R. §§ 404.1520c, 416.920c(b)(2).

The government argues that "any error the ALJ made" in this regard is harmless because the ALJ's RFC finding "was more limited than that of any state agency doctor." (R. 17, Govt.'s Mem. at 3 (citing *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal quotations omitted).) A recent Seventh Circuit decision, *Liapis v. Bisignano*, __ F.4th __, 2026 WL 1948808, at *3 (7th Cir. July 6, 2026), seems to bolster the government's argument, at least at first glance. In *Liapis* the Seventh Circuit found a "clear legal error" in the ALJ's medical opinion evaluation "where [he] failed to explain his reasoning as to . . . supportability and consistency," yet affirmed the ALJ's decision because it was "convinced that the ALJ w[ould] reach the same result" on remand and, therefore, the error was harmless. *Id.* at *3, *5.

Unlike in *Liapis*, however, this court cannot say "what the result of remand will be" here. *Id.* The government contends that the ALJ's RFC finding, which was "more limited than that of any state agency doctor," shows that the ALJ "gave 'reasoned consideration . . . to the evidence'" Matthew presented. (R. 17, Govt.'s Mem. at 3-4.) But Matthew responds that the additional restrictions the ALJ assessed concern "reaching/handling/fingering limits," not whether he is capable of light or sedentary work. (R. 18, Pl.'s Reply at 3-4.) Had the ALJ performed a proper analysis of the supportability and consistency of the state agency physicians' opinions, Matthew says she may have found the opinion that he is capable of performing light work unpersuasive and restricted him to sedentary work, thereby requiring a finding

8

that he is disabled. (Id.) Given that the ALJ may reach a different result on remand, the court declines to find the error harmless.

## C.     Treating Physician Opinion

Matthew also asserts that the ALJ erred when evaluating the November 2022 opinion of his treating physician, Dr. James Leonard. (R. 14, Pl.'s Br. at 10-14.) The court disagrees. As discussed, controlling weight is not given to any medical opinion. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The primary factors considered when assessing the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. §§ 404.1520c, 416.920c(b)(2). Matthew sought care from Dr. Leonard in October 2022, (A.R. 40), after visiting him last in December 2015 following fusion surgery, (id. at 454-55 (noting that Matthew was status post-fusion surgery)). Dr. Leonard opined at that October 2022 visit that "functionally [Matthew] is not able to work," (id. at 40), despite finding on examination that Matthew was "grossly neurologically intact in the upper and lower extremities," (id. at 455 (also noting, however, that Matthew had "marked limitation of cervical mobility")). Dr. Leonard indicated that he would request and review Matthew's previous "EMG and [] cervical [MRI] studies" and then determine Matthew's options. (Id. at 455.) After doing so, Dr. Leonard spoke with Matthew by phone in November 2022 and subsequently opined that Matthew could lift less than 10 pounds and must be limited to sedentary work, but that he was "not optimistic [Matthew] would be able to work more than 4 hours a day." (Id. at 452.)

The ALJ found Dr. Leonard's opinion "unpersuasive" because he "lack[ed] longitudinal history" and "posited that 'functionally [Matthew] was unable to work'" after what the ALJ described as a "one-time limited appointment," before seeing Matthew's prior imaging. (Id. at 40.) The ALJ further found that after reviewing the studies, Dr. Leonard assigned "excessive limitations," even though his own treatment records do not support them. (Id.) To show a lack of supportability, the ALJ pointed to Dr. Leonard's finding in October 2022 that Matthew was "grossly neurologically intact in the upper and lower extremities." (Id.) The ALJ also cited other record evidence she said was inconsistent with Dr. Leonard's opinion, including a consultative examiner's finding that Matthew had full grip strength and no lower extremity limitations, Matthew's report to the examiner that he could lift 10 to 15 pounds, and EMG and nerve conduction studies revealing "only mild bilateral median and ulnar neuropathies." (Id. (citing id. at 368, 397-405, 433).) Lastly, the ALJ pointed to the fact that at times Matthew worked more than four hours a day, even though Dr. Leonard said he could not do so. (Id. at 41.) Viewed as part of a holistic review of the ALJ's decision, the ALJ adequately articulated why she found Dr. Leonard's November 2022 opinion unpersuasive, focusing on the supportability and consistency of the opinion with record evidence. *See* 20 C.F.R. §§ 404.1520c, 416.920c(b)(2).

Matthew says the ALJ erred by considering Dr. Leonard's "lack of 'longitudinal history with [Matthew],'" especially since the state agency physicians never examined him. (R. 14, Pl.'s Br. at 10.) But a medical provider's relationship with the claimant

is just one factor an ALJ may consider in determining the persuasiveness of a medical opinion. *See Liapis*, 2026 WL 1948808, at *3 (citing 20 C.F.R. § 404.1520c). In any event, the ALJ explained why Dr. Leonard's opinion was neither supported by his treatment notes nor consistent with other objective medical evidence. (See A.R. 40-41.)

Matthew further claims that the ALJ relied on certain select evidence while ignoring other evidence that supports his position. (R. 14, Pl.'s Br. at 10-11.) For support he cites to findings that despite Dr. Leonard's October 2022 treatment notes showing he was "grossly neurologically intact," he later exhibited "reflex [and] sensory" deficits. (Id.) The government is correct, however, that such an argument amounts to an improper request for this court to reweigh evidence or substitute its judgment for that of the ALJ's. *See Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021). The same is true with respect to Matthew's contention that the ALJ unfairly cited to a consultative examiner's finding of 5/5 grip strength and Matthew's report to same that he could lift 10 to 15 pounds to discredit Dr. Leonard's opinion limiting Matthew's repetitive activity and lifting capacity. (R. 14, Pl.'s Br. at 11-12.) Rather than "playing doctor" as Matthew suggests, the ALJ was simply following the regulatory scheme in discussing inconsistencies between Dr. Leonard's opinion and the record evidence. *See* 20 C.F.R. § 404.1520c. And Matthew's argument that the ALJ should not have equated his ability to work four hours a day with an ability to sustain full-time work is improper, (R. 14, Pl.'s Br. at 14), because that is not what happened here. The ALJ noted this discrepancy in the context of assessing

Dr. Leonard's opinions, (see A.R. 39-41). Accordingly, remand is not appropriate on this ground.

## Conclusion

For the foregoing reasons, Matthew's remand request is granted. This matter is remanded for further proceedings consistent with this opinion.

**ENTER:**

_____

**Young B. Kim
United States Magistrate Judge**

12